# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. HEALTH DIMENSIONS REHABILITATION, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>REHABCARE GROUP, INC., REHABCARE GROUP EAST, INC., REHAB SYSTEMS OF MISSOURI, HEALTH SYSTEMS, INC.,<br><br>Defendants. | Case No: 4:12-cv-00848-AGF |

TO:   REHABCARE GROUP, INC. and REHABCARE GROUP EAST, INC.,

Plaintiff the United States of America, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, hereby propounds and serves the following Request for Admissions to be answered within thirty (30) days from the date of service hereof.

**INSTRUCTIONS**

In responding to this request, your attention is expressly directed to the requirements of Rule 36 of the Federal Rules of Civil Procedure that:

a. You must admit or deny each request for admission.

1

b. If a request is not admitted, the answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

c. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter requested, the party shall specify so much of it as true and qualify or deny the remainder.

d. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

e. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request.

## DEFINITIONS

These definitions apply to each and every request as if specifically set forth therein.

I.   The term "RehabCare" refers to RehabCare Group, Inc. and RehabCare Group East, Inc. RehabCare Group, Inc., incorporated in Delaware with its principal place of business in Kentucky, provides skilled rehabilitation services, including physical, occupational, and speech therapy, to patients at skilled nursing facilities ("SNFs") and assisted and independent living facilities around the country. RehabCare Group, Inc. charges these facilities for therapy services and provides them with billing

information that enables the facilities to submit claims to Medicare, Medicaid and other payors. RehabCare Group East, Inc. is a subsidiary of RehabCare Group, Inc. RehabCare Group East, Inc. is organized under Delaware law with a principal place of business in Kentucky. The term RehabCare also includes all of RehabCare Group, Inc. and RehabCare Group East, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

II. The term "RSM" refers to Rehab Systems of Missouri, a Missouri Limited Liability Corporation that offered contract rehabilitation services until 2006, exclusively or almost exclusively to nursing homes that were majority-owned by James Lincoln. The term RSM also includes all of Rehab Systems of Missouri's predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

III. The term "HSI" refers to Health Systems, Inc., a Missouri corporation that serves as a management company for various nursing homes, and all of Health Systems, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

IV. The term "The Transaction" refers to a transaction in early 2006 between RehabCare and RSM, pursuant to which RehabCare subsequently provided therapy services to many nursing homes managed by HSI.

V.     The term "Anti-Kickback Statute" or "AKS" refers to 42 U.S.C. § 1320a-7b(b).

REQUEST NO. 1: Admit that Schedule E at Bates numbers HS1004-HS1007 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of August 1, 2007.

REQUEST NO. 2: Admit that Schedule E at Bates numbers HS1008-HS1011 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of November 1, 2007.

REQUEST NO. 3: Admit that Schedule E at Bates numbers HS1012-HS1015 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of February 1, 2008.

REQUEST NO. 4:  Admit that Schedule E at Bates numbers HS1017-HS1020 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of March 1, 2008.

REQUEST NO. 5: Admit that Schedule E at Bates numbers HS1022-HS1025 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of July1, 2008.

REQUEST NO. 6: Admit that Schedule E at Bates numbers HS1027-HS1030 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of August 1, 2008.

REQUEST NO. 7: Admit that Schedule E at Bates numbers HS1032-HS1035 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of October 1, 2008.

REQUEST NO. 8: Admit that Schedule E at Bates numbers HS1037-HS1040 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of January 1, 2009.

REQUEST NO. 9: Admit that Schedule E at Bates numbers HS1057-HS1060 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of April 1, 2009.

REQUEST NO. 10: Admit that as of February 28, 2006, none of RSM's physical therapists had a clause in any employment contract with RSM that would have prevented any of the therapists from working for another therapy company.

REQUEST NO. 11: Admit that as of February 28, 2006, none of RSM's physical therapist assistants had a clause in any employment contract with RSM that would have prevented any of the physical therapist assistants from working for another therapy company.

REQUEST NO. 12: Admit that in 2003, RehabCare and RSM were in discussions for RehabCare to purchase RSM.

REQUEST NO. 13: Admit that in 2003, RehabCare was interested in acquiring a therapy company that was owned and operated by a nursing home owner/operator.

REQUEST NO. 14:  Admit that in 2003, RehabCare planned to make any acquisition of a therapy company that was owned and operated by a nursing home owner/operator contingent on a corresponding long-term therapy contract with the nursing homes.

REQUEST NO. 15:  Admit that an internal RehabCare document in 2003 contemplated a purchase price for RSM of $7 million.

REQUEST NO. 16:  Admit that as of 2003, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents at those nursing homes.

REQUEST NO. 17:  Admit that as of 2004, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents at those nursing homes.

REQUEST NO. 18:  Admit that as of 2005, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents at those nursing homes.

REQUEST NO. 19:  Admit that in November 2005, Tom Hudspeth informed Pat Henry of a $600,000 "problem" with a self funded health insurance plan.

REQUEST NO. 20:  Admit that in November 2005, Tom Hudspeth informed Pat Henry that RehabCare had to take RSM's $600,000 "problem" with a self funded health insurance plan into account in any deal between the parties.

REQUEST NO. 21: Admit that RehabCare executives recognized in internal emails in November and December 2005 that the $600,000 health insurance "problem" seemed to be RSM's "biggest issue."

REQUEST NO. 22: Admit that in public financial documents released on or about May 4, 2006, RehabCare made reference to a $600,000 payment that it had made to RSM in connection with the deal between RehabCare and RSM.

REQUEST NO. 23: Admit that RehabCare has received in excess of $70 million in revenue from the Transaction since it closed in 2006.

REQUEST NO. 24: Admit that RehabCare has received in excess of $85 million in revenue from the Transaction since it closed in 2006.

REQUEST NO. 25: Admit that RehabCare has received in excess of $90 million in revenue from the Transaction since it closed in 2006.

REQUEST NO. 26: Admit that RehabCare has received in excess of $100 million in revenue from the Transaction since it closed in 2006.

Pursuant to Federal Rules of Civil Procedure, Rule 36, each matter separately set forth above is admitted unless the undersigned is served with a signed written response to each matter within 30 days of service of this request. Reference is made to Rule 36 for further instruction as to the acceptable manner in which to deny, object or qualify your answers.

Dated: August 3, 2012         s/ Chad A. Blumenfield
                              BY: CHAD A. BLUMENFIELD (MN#387296)
                              Bahram Samie
                              Assistant United States Attorneys
                              600 U.S. Courthouse
                              300 South Fourth St.
                              Minneapolis, MN 55415
                              Chad.Blumenfield@usdoj.gov
                              Tel.: (612) 664-5600

                              Suzanne J. Moore
                              Jane Berman Shaw
                              Assistant United States Attorneys
                              Thomas F. Eagleton Courthouse
                              111 South 10th Street, Suite 20.33
                              St. Louis, MO 63102


                              Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. HEALTH DIMENSIONS REHABILITATION, INC., <br><br> Plaintiff, <br><br> vs. <br><br> REHABCARE GROUP, INC., REHABCARE GROUP EAST, INC., REHAB SYSTEMS OF MISSOURI, HEALTH SYSTEMS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Case No: 4:12-cv-00848-AGF ) ) ) ) ) ) ) |

TO: REHAB SYSTEMS OF MISSOURI and HEALTH SYSTEMS, INC.

Plaintiff the United States of America, pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, hereby propounds and serves the following Request for Admissions to be answered within thirty (30) days from the date of service hereof.

## INSTRUCTIONS

In responding to this request, your attention is expressly directed to the requirements of Rule 36 of the Federal Rules of Civil Procedure that:

a. You must admit or deny each request for admission.

1

b. If a request is not admitted, the answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter.

c. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter requested, the party shall specify so much of it as true and qualify or deny the remainder.

d. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

e. A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request.

## DEFINITIONS

These definitions apply to each and every request as if specifically set forth therein.

I. The term "RehabCare" refers to RehabCare Group, Inc. and RehabCare Group East, Inc. RehabCare Group, Inc., incorporated in Delaware with its principal place of business in Kentucky, provides skilled rehabilitation services, including physical, occupational, and speech therapy, to patients at skilled nursing facilities ("SNFs") and assisted and independent living facilities around the country. RehabCare Group, Inc. charges these facilities for therapy services and provides them with billing

information that enables the facilities to submit claims to Medicare, Medicaid and other payors. RehabCare Group East, Inc. is a subsidiary of RehabCare Group, Inc. RehabCare Group East, Inc. is organized under Delaware law with a principal place of business in Kentucky. The term RehabCare also includes all of RehabCare Group, Inc. and RehabCare Group East, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

II. The term "RSM" refers to Rehab Systems of Missouri, a Missouri Limited Liability Corporation that offered contract rehabilitation services until 2006, exclusively or almost exclusively to nursing homes that were majority-owned by James Lincoln. The term RSM also includes all of Rehab Systems of Missouri's predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

III. The term "HSI" refers to Health Systems, Inc., a Missouri corporation that serves as a management company for various nursing homes, and all of Health Systems, Inc.'s predecessors, successors, parents, subsidiaries, affiliates, groups, divisions, officers, directors, partners, employees, agents or representatives, and all others acting on their behalf.

IV. The term "The Transaction" refers to a transaction in early 2006 between RehabCare and RSM, pursuant to which RehabCare subsequently provided therapy services to many nursing homes managed by HSI.

     V.    The term "Anti-Kickback Statute" or "AKS" refers to 42 U.S.C. § 1320a-7b(b).

    REQUEST NO. 1: Admit that Schedule E at Bates numbers HS1004-HS1007 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of August 1, 2007.

    REQUEST NO. 2: Admit that Schedule E at Bates numbers HS1008-HS1011 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of November 1, 2007.

    REQUEST NO. 3: Admit that Schedule E at Bates numbers HS1012-HS1015 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of February 1, 2008.

    REQUEST NO. 4:  Admit that Schedule E at Bates numbers HS1017-HS1020 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of March 1, 2008.

    REQUEST NO. 5: Admit that Schedule E at Bates numbers HS1022-HS1025 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of July1, 2008.

    REQUEST NO. 6: Admit that Schedule E at Bates numbers HS1027-HS1030 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of August 1, 2008.

REQUEST NO. 7: Admit that Schedule E at Bates numbers HS1032-HS1035 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of October 1, 2008.

REQUEST NO. 8: Admit that Schedule E at Bates numbers HS1037-HS1040 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of January 1, 2009.

REQUEST NO. 9: Admit that Schedule E at Bates numbers HS1057-HS1060 correctly lists the nursing homes to which RehabCare provided therapy pursuant to the Transaction as of April 1, 2009.

REQUEST NO. 10:  Admit that as of February 28, 2006, none of RSM's physical therapists had a clause in any employment contract with RSM that would have prevented any of the therapists from working for another therapy company.

REQUEST NO. 11:  Admit that as of February 28, 2006, none of RSM's physical therapist assistants had a clause in any employment contract with RSM that would have prevented any of the physical therapist assistants from working for another therapy company.

REQUEST NO. 12:  Admit that in 2003, RehabCare and RSM were in discussions for RehabCare to purchase RSM.

REQUEST NO. 13:  Admit that in 2003, RehabCare was interested in acquiring a therapy company that was owned and operated by a nursing home owner/operator.

5

REQUEST NO. 14:  Admit that in 2003, RehabCare planned to make any acquisition of a therapy company that was owned and operated by a nursing home owner/operator contingent on a corresponding long-term therapy contract with the nursing homes.

REQUEST NO. 15:  Admit that as of 2003, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents.

REQUEST NO. 16:  Admit that as of 2004, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents.

REQUEST NO. 17:  Admit that as of 2005, more than 50 nursing homes owned primarily by James Lincoln contracted with RSM so that RSM provided physical therapy and other kinds of therapy to nursing home residents.

REQUEST NO. 18:  Admit that in 2004, more than 50 nursing homes owned primarily by James Lincoln entered into new contracts with RSM.

REQUEST NO. 19:  Admit that in November 2005, Tom Hudspeth informed Pat Henry of a $600,000 "problem" with a self funded health insurance plan.

REQUEST NO. 20:  Admit that in November 2005, Tom Hudspeth informed Pat Henry that RehabCare had to take RSM's $600,000 "problem" with a self funded health insurance plan into account in any deal between the parties.

REQUEST NO. 21:  Admit that RSM's profit since the Transaction closed in 2006 has exceeded $10 million.

REQUEST NO. 22:  Admit that RSM's profit since the Transaction closed in 2006 has exceeded $12 million.

REQUEST NO. 23:  Admit that RSM's profit since the Transaction closed in 2006 has exceeded $14 million.

REQUEST NO. 24:  Admit that RSM's profit since the Transaction closed in 2006 has exceeded $16 million.

REQUEST NO. 25:  Admit that no RSM employee has provided any physical therapy on behalf of RSM since the Transaction closed in 2006.

REQUEST NO. 26:  Admit that no RSM employee has provided any type of therapy on behalf of RSM since the Transaction closed in 2006.

Pursuant to Federal Rules of Civil Procedure, Rule 36, each matter separately set forth above is admitted unless the undersigned is served with a signed written response to each matter within 30 days of service of this request. Reference is made to Rule 36 for further instruction as to the acceptable manner in which to deny, object or qualify your answers.

Dated: August 3, 2012         s/ Chad A. Blumenfield
                              BY: CHAD A. BLUMENFIELD (MN#387296)
                              Bahram Samie
                              Assistant United States Attorneys
                              600 U.S. Courthouse
                              300 South Fourth St.
                              Minneapolis, MN 55415
                              Chad.Blumenfield@usdoj.gov
                              Tel.: (612) 664-5600

                              Suzanne J. Moore
                              Jane Berman Shaw
                              Assistant United States Attorneys
                              Thomas F. Eagleton Courthouse
                              111 South 10th Street, Suite 20.33
                              St. Louis, MO 63102


                              Attorneys for the United States