UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel )<br>HEALTH DIMENSIONS )<br>REHABILITATION, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>REHABCARE GROUP, INC.; )<br>REHAB SYSTEMS OF MISSOURI; )<br>HEALTH SYSTEMS, INC., and )<br>REHABCARE GROUP EAST, INC.; )<br>)<br>Defendants. ) | Case No. 4:12CV00848 AGF |

**MEMORANDUM AND ORDER**

This *qui tam* action is before the Court on two motions to dismiss the case, one filed by Defendants RehabCare Group East, Inc., and RehabCare Group, Inc. (jointly "RehabCare") (Doc. No. 119); and one filed by Defendants Health Systems, Inc. ("HSI") and Rehab Systems of Missouri ("RSM") (Doc. No. 121).   Relator brought this action, in which the Government later intervened, under the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"), alleging that Defendants submitted or caused to be submitted to the United States false claims for payment under the Medicare and/or Medicaid programs, as the result of an illegal kickback scheme.   For the reasons set forth below, both motions to dismiss shall be denied.

## BACKGROUND

The amended complaint alleges the following.  HSI is a nursing-home management company.  RSM is a contract provider of rehabilitation therapy services to residents at managed skilled nursing facilities.  James Lincoln is the majority owner of HSI, of the more than 60 HSI-managed nursing facilities in Missouri at issue, and of RSM.  Until 2006, RSM provided therapy services at the nursing homes at issue.  In February 2006, RSM and RehabCare entered into a five-year "Subcontract Agreement" that called for RehabCare to provide therapy services at these nursing homes.  In exchange, RehabCare agreed to pay RSM a one-time payment of approximately $600,000, as well as a percentage (approximately 10%) of the profit from the therapy services that would be performed by RehabCare.  After the agreement was entered into, RSM essentially ceased operations except for collecting its profit under the terms of the agreement.  That profit, according to the Government, has exceeded $10 million.

The Government's theory in the case is that the $600,000 payment and the ongoing profit RSM receives constitute illegal kickbacks in violation of the federal Anti-Kickback Statute, which prohibits the acceptance or provision of remuneration "in return for referring an individual . . . for . . . any item or service for which payment may be made . . . under a Federal Health Care Program."  42 U.S.C. § 1320a-7b(b)(1)(A).  As stated by the Government, the agreement between RehabCare resulted in "kickbacks paid from RehabCare to RSM in exchange for referrals of business reimbursed by Medicare and Medicaid."  The amended complaint claims that from approximately March 2006 to the time of the Government's intervention in the lawsuit, Defendants thereby knowingly

presented, or caused to be presented, to the United States, claims for Medicare and Medicaid payments that falsely certified that the claims were in compliance with the law, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) (FCA pre-2009 amendments) and 31 U.S.C. § 3729(a)(1)(A) (current version of FCA).  The Government also asserts state common law claims of unjust enrichment and "payment by mistake."

Defendants' theory is that the agreement between RehabCare and RSM provides for valid activities -- "paying a fee to secure and protect an in-place work force assembled by another or employing a subcontract arrangement that generates a profit for the primary contractor."  In Defendants' view, Lincoln, as the majority owner of RSM and the nursing homes at issue, "structured the transaction with RehabCare in a way that comported with [federal] guidelines and permitted him to centralize and distribute profits as he saw fit." (Doc. No. 122 at 102.)

In support of their motions to dismiss the complaint, both sets of Defendants raise essentially the same three arguments: (1) the remuneration to RSM could not have been made in return for future patient referrals because, according to the facts alleged by the Government, RSM ceased operation when the 2006 agreement was entered into -- thus it did not have the capacity to make future referrals; (2) the Government failed to plead the alleged fraud with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b), by failing to identify any specific individual(s) at RSM who referred Medicare or Medicaid patients to RehabCare in return for a kickback, or any individuals at RehabCare who accepted such payments; and (3) the Anti-Kickback Statute is void for vagueness as

applied to the alleged facts of this case, because the Government is attempting to apply it "to an ordinary subcontract for appropriate healthcare services."

While the motions to dismiss were pending, the Court granted Defendants' two separate motions to compel the Government to identify the individuals who made and received the remuneration that the Government contends violated the Anti-Kickback Statute.

## **DISCUSSION**

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To survive a motion to dismiss, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012).

The FCA imposes liability on those who present false claims, or cause false claims to be presented, to the Government for payment or approval; or use false statements, or cause false statements to be used, to get a false claim paid or approved by the Government, among other things. 31 U.S.C. § 3729(a)(1)-(3).[1] The FCA is concerned with

---

[1] The Act's 2009 amendments do not change the analysis here. The above cite cites the pre-amendment statutory provisions.

4

"protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money."  *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).   The focus is thus on the alleged false claims, as the FCA "attaches liability, not to the underlying fraudulent activity, but to the 'claim for payment.'"  *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 677 (8th Cir. 1998)

As the FCA is an anti-fraud statute, any claims asserted thereunder must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which provides that the circumstances constituting fraud must be stated with particularity.  *United States ex rel. Joshi v. St. Luke's Hosp., Inc.* 441 F.3d 552, 556 (8th Cir. 2006).   To meet the requirements of Rule 9(b), the plaintiff "must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."  *Id.* at 557.   Specific details of every alleged false claim need not be alleged, but some representative examples of false claims must be provided.  *Id.*

The Court concludes that Defendants' arguments for dismissal are without merit.  The Court does not perceive a logical inconsistency between the Government's allegation that after the 2006 agreement, RSM ceased activities as a provider of therapy services yet received a percent of the remuneration for such services, and the allegation that this violated the Anti-Kickback Statute.   While the Government's proof may not ultimately be sufficient to prevail, the Court concludes that the Government has stated a claim under the FCA.  *See, e.g., Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 473 (5th Cir. 2012) (describing the district court's decision to deny a motion to dismiss a similar claim).

5

In light of the granting of Defendants' motions to compel, the Court also does not believe that dismissal of the complaint under Rule 9(a) is warranted. The Court believes that the amended complaint (especially as supplemented by the discovery the Government was ordered to provide) includes enough detail to inform Defendant of the core factual basis for the fraud aspect of the claims.

Lastly, whether or not Defendants engaged in the alleged conduct in violation of the Anti-Kickback Statute remains to be seen. But the Statute itself is not void for vagueness in the context of this case. *See Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by Defendants RehabCare Group East, Inc., and RehabCare Group, Inc. is **DENIED**. (Doc. No. 119.)

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendants Health Systems, Inc., and Rehab Systems of Missouri is **DENIED**. (Doc. No. 121.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 13th day of March, 2013.