UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> HEALTH DIMENSIONS ) <br> REHABILITATION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> REHABCARE GROUP, INC.; ) <br> REHAB SYSTEMS OF MISSOURI; ) <br> HEALTH SYSTEMS, INC., and ) <br> REHABCARE GROUP EAST, INC.; ) <br> ) <br> Defendants. ) | Case No. 4:12CV00848 AGF |

## MEMORANDUM AND ORDER

This *qui tam* action is before the Court on the (converted) motion for summary judgment (as supplemented) against Relator, filed by Defendants RehabCare Group East, Inc., and RehabCare Group, Inc. (jointly "RehabCare") (Doc. No. 191 as supplemented by Doc. No. 235.)   Relator brought this action, in which the Government later intervened, under the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA"), alleging that Defendants submitted or caused to be submitted to the United States false claims for payment under the Medicare and/or Medicaid programs, as the result of an illegal kickback scheme. RehabCare argues that the evidence demonstrates that the material allegations and transactions within Relator's complaint were based upon publicly disclosed information (Internet news media articles and an SEC administrative report), and thus this Court lacks subject matter jurisdiction under the "public disclosure bar" of the FCA.   Oral arguments

were heard on the motion for summary judgment on Tuesday, May 7, 2013. For the reasons set forth below, the motion shall be denied.

## BACKGROUND

The amended complaint alleges the following. Defendant Health Systems, Inc. ("HSI") is a nursing-home management company. Defendant Rehab Systems of Missouri ("RSM") is a contract provider of rehabilitation therapy services to residents at managed skilled nursing facilities. James Lincoln is the majority owner of HSI, of the more than 60 HSI-managed nursing facilities in Missouri at issue, and of RSM. Until 2006, RSM provided therapy services at the nursing homes at issue. In February 2006, RSM and RehabCare entered into a five-year "Subcontract Agreement" that called for RehabCare to provide therapy services at these nursing homes. In exchange, RehabCare agreed to pay RSM a one-time payment of approximately $600,000, as well as a percentage (approximately 10%) of the profit from the therapy services that would be performed by RehabCare. After the agreement was entered into, RSM essentially ceased operations except for collecting its profit under the terms of the agreement. That profit, according to the Government, has exceeded $10 million.

The Government's theory in the case is that the $600,000 payment and the ongoing profit RSM receives constitute illegal kickbacks in violation of the federal Anti-Kickback Statute, which prohibits the acceptance or provision of remuneration "in return for referring an individual . . . for . . . any item or service for which payment may be made . . . under a Federal Health Care Program." 42 U.S.C. § 1320a-7b(b)(1)(A). As stated by the Government, the agreement between RehabCare resulted in "kickbacks paid from

2

RehabCare to RSM in exchange for referrals of business reimbursed by Medicare and Medicaid." The amended complaint claims that from approximately March 2006 to the time of the Government's intervention in the lawsuit, Defendants thereby knowingly presented, or caused to be presented, to the United States, claims for Medicare and Medicaid payments that falsely certified that the claims were in compliance with the law, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) (FCA pre-2009 amendments) and 31 U.S.C. § 3729(a)(1)(A) (current version of FCA). The Government also asserts state common law claims of unjust enrichment and "payment by mistake."

Defendants' theory is that the agreement between RehabCare and RSM provides for valid activities -- "paying a fee to secure and protect an in-place work force assembled by another or employing a subcontract arrangement that generates a profit for the primary contractor." In Defendants' view, Lincoln, as the majority owner of RSM and the nursing homes at issue, "structured the transaction with RehabCare in a way that comported with [federal] guidelines and permitted him to centralize and distribute profits as he saw fit." (Doc. No. 122 at 102.)

Relator, a direct business competitor of RehabCare, contacted the Government with its allegations of fraud on May 12, 2006. Relator's allegations were based on a May 4, 2006 RehabCare conference call that was webcast live on RehabCare's website and was made available for replaying. (Doc. No. 168-2 at 14-23.) The conference call was held in connection with RehabCare's Form 8-K SEC report filed on the same day. Relator's CEO, Mark Essling, listened to and transcribed the conference call. In the SEC filing, RehabCare noted that "[d]espite the substantial revenue growth, operating earnings for the

3

division declined significantly . . . .   Also contributing to the operating losses were legal fees related to ongoing issues, and a one-time $0.6 million therapist recruiting fee."   A "FD (Fair Disclosure) Wire" news service article relating to the RehabCare conference call, published by LexisNexis with an upload date of May 12, 2006, included a list of participants at the May 4, 2006 conference call, along with an overview, financial data, presentation summary, and a transcript of the call itself.   The conference call was published in transcript form in a May 18, 2006 Insurance News Net online article.

Relator filed its complaint in this action under seal on July 11, 2007 in the United States District Court for the District of Minnesota.   On August 4, 2011, the Government intervened in relevant part (Doc. No. 47) and the complaint was unsealed.   On December 5, 2011, the United States filed an amended complaint.   (Doc. No. 49.)   The case was thereafter transferred to this district on May 10, 2012.

## ARGUMENTS OF THE PARTIES

As noted above, in support of its motion for summary judgment against Relator, RehabCare argues (Doc. Nos. 168, 193, 236) that the evidence demonstrates that the material allegations and transactions within Relator's complaint were based upon publicly disclosed information (Internet news media articles and the SEC filing), and thus this Court lacks subject matter jurisdiction under the public disclosure bar of the FCA.   Prior to March 23, 2010, the FCA provided that when a claim was "based upon" certain public disclosures, the Court lacks jurisdiction over the action, as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal civil, or administrative hearing, in a congressional,

> administrative, or Government Accounting office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Effective March 23, 2010, the FCA was amended to provide as follows:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A). An "original source" is defined as who "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." *Id*. §3730(e)(4)(B). This amendment is not retroactive. *United States ex rel. Hixson v. Health Mgmt. Sys., Inc.*, 613 F.3d 1186, 1188 (8th Cir. 2010).

Relator argues (Doc Nos. 184, 196) that the materials relied upon by RehabCare did not disclose the essential elements of fraud and thus do not trigger the jurisdictional bar; rather, Relator, after the investigation and analysis by Essling, based on his "unique knowledge and experience" in the field, "alleged essential additional information that exposed Defendants' fraud, and thus the public disclosure bar does not apply to Relator in

5

this case." According to Relator, RehabCare's public statements about a recruiting fee "disclosed only a single state of facts (that a recruiting fee was paid) without disclosing any information that the payment was a kickback or anything other than a valid transaction."

Relator submits Essling's February 28, 2013 declaration that he developed a suspicion that the recruiting fees mentioned in the May 4, 2006 call had to be something else, and he began his investigation and analysis which lasted until July 2007. These arguments were raised by the parties in connection with RehabCare's motion to dismiss the complaint, which was converted to the present motion for summary judgment. In opposition to the motion to dismiss, the Government filed a "Statement of Interest" suggesting that Essling only reached his conclusion of fraud after a year of investigating the matter, and that "Relator alleged essential additional information that exposed Defendants' fraud, and thus the public disclosure bar does not apply to Relator in this case." (Doc. No. 188.)

In a supplement to its motion for summary judgment, Rehabcare submits a copy of a complaint against RehabCare that Relator had filed under seal on May 12, 2006, in the Eastern District of Pennsylvania. The Pennaylvania complaint is virtually identical to the one in the present action, except that the Pennsylvania complaint did not identity Health Dimension, Inc., as the chain of nursing homes involved. According to RehabCare, a copy of the Pennsylvania complaint was first provided to RehabCare during discovery on April 13, 2013. The Government declined to intervene in the Pennsylvania action and Relator voluntarily dismissed it. RehabCare argues that the Pennsylvania lawsuit undermines the assertion in Relator's response to the summary judgment motion and in

6

Essling's declaration (made under penalty of perjury) (Doc. No. 196-2) that Essling relied on his independent research and analysis conducted over the course of a year following the May 4, 2006 phone call to determine that RehabCare had engaged in violations of the Anti-Kickback Statute.

In addition, RehabCare argues that the first suit was a public disclosure of the fraud and thus bars the Court's jurisdiction over the present suit, and that the Government's Statement of Interest should be ignored because the Government knew about the Pennsylvania lawsuit, yet suggested that Relator needed a year to investigate the situation before determining that there was fraud.

In response to the supplemental arguments, Relator argues that the Pennsylvania suit was not a "public disclosure" until it was unsealed on January 7, 2009, 18 months after the present suit was filed.   Furthermore, Relator argues, the Pennsylvania suit was not a new revelation to RehabCare when it was produced during discovery in April 2013. Rather, once the suit was unsealed it was public record; and RehabCare's filings on December 29, 2012, with respect to the current motion (then a motion to dismiss) included a memorandum from Essling to Relator's employees dated December 15, 2011, stating that that Relator had filed a case against RehabCare under seal in 2006, that the United States had taken over the case, and that the seal had been lifted.   (Doc. 170 filed under seal). Thus, according to Relator, there was nothing misleading in Relator not referring to the Pennsylvania lawsuit in its prior submissions, because RehabCare was already (impliedly) aware of it.

7

In addition to its arguments above, RehabCare argues that any false claims submitted after the March 23, 2010 effective date of the 2010 amendment to the FCA must be analyzed under the revised definition of "original source."  According to RehabCare, "the case at bar presents precisely the type of situation that causes courts to assign 'original source' status to non-insider relators - unique experience and investigation that leads to the discovery of fraud that the government would not have uncovered itself."

Relator responds that "even if the Court were to find as a matter of law that the public disclosure bar otherwise applied to the claims concerning the 'recruiting fee,' [RehabCare] would not be entitled to summary judgment that Relator, as a matter of law, is not an original source."

Relator also argues that it was not a year-long investigation by Essling that defeats RehabCare's public disclosure arguments, but rather Essling's realization (even by May 12, 2006) that the seemingly innocent recruitment fees referenced in the phone call and SEC filing in fact constituted fraud on the government.  In sum, Relator reaffirms its basic argument that the public disclosure bar does not apply because without the information that Essling provided to the Government (that there was no valid business reason for a therapy provider to pay a recruiting fee to obtain therapists under the circumstances), based on his experience, RehabCare's fraud would not have been uncovered by the Government.

## **DISCUSSION**

The FCA imposes civil penalties on those who present false claims, or cause false claims to be presented, to the Government for payment or approval; or use false statements, or cause false statements to be used, to get a false claim paid or approved by the

8

Government, among other things. 31 U.S.C. § 3729(a)(1)-(3). The FCA is concerned with "protecting the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money." *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).

"A challenge under the FCA jurisdictional bar is necessarily intertwined with the merits and is, therefore, properly treated as a motion for summary judgment." *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011) (citation omitted). The Eighth Circuit has held, under the pre-amendment version of the public disclosure bar, that "a qui tam suit is 'based upon' a public disclosure whenever the allegations in the suit and in the disclosure are the same, regardless of where the relator obtained his information." *United States ex rel. Minn. Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1045 (8th Cir. 2002) (citation omitted). To trigger the FCA's public disclosure bar, "the essential elements exposing the transaction as fraudulent must be publicly disclosed . . . so as to raise a reasonable inference of fraud." *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1512 (8th Cir. 1994). The publicly disclosed information must "present so clear or substantial an indication of foul play as to qualify as either an allegation of fraud or a fraudulent transaction." *Id.*

The 2006 Pennsylvania lawsuit was not a "public disclosure" until it was unsealed. *See, e.g., United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 333-34 (3d Cir. 2005). In any event, Relator was the source of that lawsuit. Essling's declaration, the Government's Statement of Interest in connection with the motion to dismiss, and Relator's argument opposing the motion for summary judgment, all suggesting that

9

Essling had to investigate the matter for approximately a year to determine that there was fraud, are troubling. Nevertheless the Court concludes that the public disclosure bar does not apply here, because without Essling's analysis, the alleged fraud would not have been understood by the government based on the public disclosures RehabCare relies on. *See Hixson*, 613 F.3d at 1188 ("Because the administrative documents that the defendants relied on did not disclose this essential element—the false claim itself—we cannot say that their claims were 'based upon . . . public disclosure of allegations or transactions' under the FCA."); *Rabushka*, 40 F.3d at 1512 (holding that disclosures that publicly revealed the defendant's spinoff of a company, as well as the company's growing unfunded pension woes and eventual bankruptcy, did not raise the inference that the defendant's officials intentionally and fraudulently understated the pension problem in an attempt to avoid liability; and thus that the district court's reliance on "the mere disclosure of the 'subject transactions' read the jurisdictional bar too broadly") (citing with approval *Cooper v. Blue Cross & Blue Shield of Fla*., 19 F.3d 562 (11th Cir. 1994) (holding that a Government Accounting Office report that criticized a particular payment monitoring plan and noted a potential conflict of interest by the defendant, did not allege any wrongdoing by the defendant, and so did not constitute a 'public disclosure of allegations or transactions' that the defendant knowingly violated the law)).

    The same result is reached under the 2010 amendments to the public disclosure bar, because the information Relator provided to the Government "materially [added]" to the information already publically disclosed.

## CONCLUSION

The Court concludes that the public disclosure bar does not apply here to deprive the Court of subject matter jurisdiction over this action.

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment against Relator filed by Defendants RehabCare Group East, Inc., and RehabCare Group, Inc., is **DENIED**.   (Doc. No. 191 as supplemented.)

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of May, 2013.