UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA EX REL. | ) | |
| HEALTH DIMENSIONS | ) | |
| REHABILITATION, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No:  4:12-cv-00848-AGF |
| REHABCARE GROUP, INC., REHABCARE | ) | |
| GROUP EAST, INC., REHAB SYSTEMS OF | ) | |
| MISSOURI, HEALTH SYSTEMS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' TRIAL BRIEF

Plaintiff, the United States of America ("United States"), respectfully submits its trial brief.

### I.       Procedural Status & Factual Background

The United States filed its complaint in intervention on December 5, 2011 in the District Court for the District of Minnesota alleging a violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq. (Count I), and two common law counts of Unjust Enrichment (Count II) and Payment by Mistake (Count III).  The case was transferred to this Court on May 8, 2012 (Docket No. 102).  The Court denied Defendants' motions to dismiss on March 13, 2013 (Docket No. 205).  Discovery closed in this case on May 23, 2013, the Court denied all motions for summary judgment on August 29, 2013 (Docket No. 433), and trial is scheduled for September 23, 2013.

The United States alleges that Defendants Rehab Systems of Missouri ("RSM") and Health Systems, Inc. ("Health Systems") solicited and received kickbacks from the RehabCare

Defendants in return for providing to RehabCare access to Medicare therapy business from approximately 60 nursing homes.  As a result, Defendants knowingly caused false claims to be presented to the Government in violation of the False Claims Act.

## II.    Count One: The False Claims Act

A violation of the FCA occurs when any person or entity "knowingly presents, or causes to present, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a); *see United States v. Advance Tool Co*., 902 F. Supp. 1011, 1016 (W.D. Mo. 1995), *aff'd without opinion*, 86 F.3d 1159 (8th Cir. 1996).  In enacting the False Claims Act, "Congress wrote expansively, meaning 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.' " *Cook County v. U.S. ex rel. Chandler,* 538 U.S. 119, 129 (2003) (quoting *United States v. Neifert-White Co.,* 390 U.S. 228, 232 (1968)). The False Claims Act is violated not only by a person who makes a false statement or a false record to get the United States to pay a claim, but also by one who engages in a fraudulent course of conduct that causes the United States to pay a claim for money.  *Neifert-White*, 390 U.S. at 233; *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 737-38 (N.D. Ill. 2010).

Compliance with the Anti-Kickback Statute ("AKS") is material to payment of Medicare claims.  *U.S. ex rel. Health Dimensions Rehabilitation, Inc. v. RehabCare Group, Inc. et al.*, 4:12-CV-00848, at 9 (E.D. Mo. Aug. 30, 2013) (Docket No. 433).  A claim is therefore false under the FCA if it is based on federal healthcare business obtained in violation of the AKS. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899, 902 (5th Cir. 1997) ("[W]here the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false

or fraudulent claim when he or she falsely certifies compliance with that statute or regulation."); *U.S. ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2008 WL 5282139, at *4 (S.D. Ohio Dec. 18, 2008).

Thus, to recover under the FCA, the United States must prove, by a preponderance of the evidence, that: (1) a Defendant submitted or caused to be submitted claims for payment to the Medicare program; (2) the claims were false or fraudulent; and (3) Defendants knew the claims were false or fraudulent. 31 U.S.C. § 3729(a)(1). The second and third elements are satisfied if the United States demonstrates a knowing and willful violation of the AKS. *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am.*, 565 F. Supp. 2d 153, 158 (D.D.C. 2008) (holding in FCA case predicated on AKS violation, relator had to show that defendant "caused claims to be submitted to the Government, remunerated physicians with a purpose to induce referrals, and knew that its actions violated the AKS"); *Mason*, 731 F. Supp. 2d at 738 (defendant's alleged violation of the AKS resulted in the "natural and foreseeable consequence" of providers submitting certifications of compliance and claims for payment to the government); *U.S. ex rel. Nehls v. Omnicare, Inc. et al.* No. 07-C-05777, 2013 WL 3819671, at *9-*10 (N.D. Ill. July 23, 2013).

To show a violation of the AKS, the United States must prove, again by a preponderance of the evidence, that: (1) Defendants offered, paid, asked for, or received remuneration; (2) with a purpose to induce the referral of federal healthcare business; and (3) the Defendants did so knowingly and willfully.  42 U.S.C. § 1320a-7b(b)(1)-(2).

Remuneration is defined broadly to mean "anything of value," including cash and non-cash benefits, received directly or indirectly, overtly or covertly.  *Fry,* 2008 WL 5282139, at *7 (citing OIG Anti-Kickback Provisions, 56 Fed. Reg. 35952-01, 35,958 (1991)).

The United States does not need to prove that the only, or even the primary, purpose of Defendants' actions was to induce referrals, so long as one purpose of the remuneration was to

3

induce the referral of therapy business paid for by Medicare. *U.S. ex rel. Health Dimensions Rehabilitation, Inc. v. RehabCare Group, Inc. et al.*, 4:12-CV-00848, at 9 (E.D. Mo. Aug. 30, 2013) (Docket No. 433).

To show that Defendants acted "knowingly and willfully," the United States must show only that Defendants knew that their conduct was wrongful. *United States v. Jain*, 93 F.3d 436, 441 (8th Cir. 1996). It is not necessary to prove that Defendants knew they were violating the AKS specifically. *Id.*

As relief, the United States seeks the recovery of sums paid out by the Medicare program for claims the government alleges were tainted by kickbacks, statutorily mandated treble damages, and statutory penalties under the FCA. *See United States v. Rogan*, 459 F. Supp. 2d 692, 720, 726-27 (N.D. Ill. 2006), *aff'd* 517 F.3d 449 (7th Cir. 2008). To recover damages under the FCA, the United States does not need to demonstrate that it has suffered any harm, for "the Government does not get what it bargained for when a defendant is paid by [Centers for Medicare and Medicaid Services] for services tainted by a kickback." *U.S. ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 314 (3d Cir. 2011). Damages in this case are determined by computing the amount of money the government paid out by reason of the false claims. Every time the nursing homes submitted a claim to the government, they were therefore impliedly certifying their compliance with a condition of payment for Medicare claims. Each and every claim submitted after that is therefore false as a matter of law. *See* S. Rep. No. 99-345, at 9 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5274 ("*[E]ach and every claim* submitted under a contract, loan guarantee, or other agreement which was originally obtained by means of false statements or other corrupt or fraudulent conduct, or in violation of any statute or applicable regulation, constitutes a false claim.") (emphasis added).

4

Because the government would not have paid Defendants' claims had it known of the AKS violation, any value of therapy services provided to the nursing home patients is not relevant to the determination of damages.  *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (United States' damages in a False Claims Act case based on violations of the Stark Amendment and Anti-Kickback Statute were the sum of the reimbursement payments that Medicare and Medicaid paid to a hospital for the services rendered in violation of those laws even though the patients received all of the care reflected on the claims forms); *U.S. ex rel Freedman v. Suarez-Hojos*, No. 8:04-cv-933, 2012 WL 4344199, at *3-*5 (M.D. Fla. Sept. 21, 2012) (same); *see also U.S. ex rel. Antidiscrimination Center of Metro New York, Inc. v. Westchester County*, No. 06 Civ. 2860, 2009 WL 1108517, at *2 (S.D.N.Y. Apr. 24, 2009) (rejecting "benefit of the bargain" theory where government provided a subsidy premised on certification of compliance).

The proposed relief will make the Medicare program whole and will serve to deter the Defendants and other companies from engaging in similar conduct in the future.

## III.    Count Two: Unjust Enrichment

The United States may bring federal common law counts in a FCA case as alternative theories of recovery.  *U.S. v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 459 (W.D. Pa. 2012) (citing *United States v. Silliman*, 167 F.2d 607, 611 (3d Cir. 1948)); *Rogan*, 459 F. Supp. 2d at 721, 728.  Common law claims in FCA cases are governed by federal common law.  *Educ. Mgmt. Corp.*, 871 F. Supp. 2d at 459.

The United States may recover on a claim of unjust enrichment if it proves, by a preponderance of the evidence, the following elements: (1) the United States conferred a financial benefit on a Defendant; and (2) the Defendant retained the benefit under circumstances where it would be unjust for the Defendant to retain it.  *Rogan*, 459 F. Supp. 2d at 728; *see*

5

*United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 609 (8th Cir. 1999); Restatement of Restitution, § 1 (1937).

## IV.     Count Three: Payment by Mistake

To recover on a theory of payment by mistake, the United States must prove that: (1) The Medicare program made payments on claims a Defendant caused to be submitted; and (2) The Medicare program paid the claims based on a mistaken belief that the therapy services were provided in compliance with the Anti-Kickback Statute.  *United States v. Wurts,* 303 U.S. 414, 416 (1938); *Rogan*, 459 F. Supp. 2d at 721, 728; *U.S. ex rel. Roberts v. Aging Care Home Health, Inc*., 474 F. Supp. 2d 810, 819 (W.D. La. 2007).

## V.     Specific Evidentiary Issues

### A.     Presumption of Authenticity for Documents Produced by Defendants

The vast majority of exhibits the United States intends to offer in this case are documents Defendants produced to the United States in response to subpoenas during the investigative phase or Fed. R. Civ. P. 34 requests for production.  Such documents are presumed to be authentic based on the Defendants' production to the United States.  *Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1131 (8th Cir. 1994) (holding that bank examination work papers produced by plaintiff during discovery were properly admitted into evidence over plaintiff's authenticity objection); *see also United States v. Lawrence,* 934 F.2d 868, 871 (7th Cir. 1991) (act of producing documents in response to grand jury subpoena authenticates them); *United States v. Varner*, 13 F.3d 1503, 1509 (11th Cir. 1994) (plaintiff sufficiently authenticated promissory notes for admission into evidence by producing them during discovery). To challenge their authenticity, Defendants must rebut the presumption by bringing forth evidence that the documents they produced are not authentic.  *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 552 (D. Md. 2007).

6

## B.       Self-Authenticating Business Records

The United States may seek to introduce various business records, primarily claims records originating from the Centers for Medicare and Medicaid Services ("CMS"), under Fed. R. Evid. 803(6) and 902(11).   The business records exception to the hearsay rule is well established.  *United States v. Roulette*, 75 F.3d 418, 422 (8th Cir. 1996) (laboratory reports were admissible as business records over defendant's constitutional objections); *United States v. Baker*, 855 F.2d 1353, 1359-60 (8th Cir. 1988).  Fed. R. Evid. 803(6) explicitly references Fed. R. Evid. 902(11), which provides:

> (11) Certified Domestic Records of Regularly Conducted Activity. – The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record:
>
> > (A) was made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters;
> >
> > (B) was kept in the course of the regularly conducted activity; and
> >
> > (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Under Fed. R. Evid. 902(11), business records can be certified through a written declaration by a qualified record custodian pursuant to Fed. R. Evid. 902(11) before trial, without live testimony.  *United States v. Klinzing*, 315 F.3d 803, 805 (7th Cir. 2003) (business records admissible without foundational testimony from the record custodian so long as the records are authenticated by declaration); *United States v. Laguerre*, 119 F. App'x. 458 (4th Cir. 2005).  If the declaration meets the necessary foundational requirements and the offering party provides timely notice, then the business records are admissible without live records custodian testimony. *Klinzing*, 315 F.3d at 809.  Fed. R. Evid. 803(6) was specifically amended to avoid the expense

7

and inconvenience of producing time-consuming foundation witness testimony in situations where the authenticity of the business records could be confirmed by written declarations.  *Id.*

Here, the government provided timely notice to Defendants of its intent to use these business records certifications.  Each of the certifications is signed by a custodian and recites all of the foundational requirements for business records.  The United States produced the records to Defendants during the discovery period.  It would be resource-intensive and unnecessary to require live witness testimony regarding the authenticity of these business records offered as evidence.

### C.      Testimony regarding Tom Hudspeth

Counsel for RSM and HSI informed the United States for the first time in March that Mr. Hudspeth, a key witness involved in the alleged unlawful transaction, would be unable to sit for a deposition due to his health.  The parties discussed this issue with the Court on April 4, 2013, and it was determined that Defendants could not call Mr. Hudspeth to testify at trial without permitting the United States to take his deposition.  Mr. Hudspeth was never deposed.  The parties ultimately agreed to permit Mr. Lincoln to ask Mr. Hudspeth a series of predetermined questions and testify about Mr. Hudspeth's responses during Mr. Lincoln's deposition. Defendants agreed to waive any hearsay objections to this testimony if introduced by the United States; the United States reserved its right to object to the testimony at trial.  The United States also reserved its right to introduce evidence of Mr. Hudspeth's interview during the investigative phase of the case if certain conditions arise, most notably if the admissibility of Mr. Lincoln's testimony regarding Mr. Hudspeth's responses is called into question.

### D.      Expert Testimony Regarding Damages

The United States intends to introduce testimony by its expert witness, Jeffrey Castle, regarding the total amount the government paid out on the claims that were tainted by

Defendants' illegal kickback arrangement.  Mr. Castle's opinion is based on claims submitted to Medicare between March 2006 (when the unlawful transaction was executed) and December 2011 (when the United States intervened in the action).

     **E.**    **Summary Charts Under Fed. R. Evid. 1006**

     The Government may offer charts that summarize some of the evidence presented at trial. For example, the United States has prepared a summary of the cost reports and provider enrollment agreements Health Systems and the nursing homes submitted to Medicare that certified compliance with the AKS.  Such summaries are admissible as convenient compilations of the underlying evidence upon which they are based.  *United States v. Possick*, 849 F.2d 332, 339 (8th Cir. 1988).  Charts are often used in health care fraud cases because the underlying evidence can be complex and paper-intensive.  *See United States v. Gold*, 743 F.2d 800, 816 (8th Cir. 1984) (no abuse of discretion to admit chart summarizing evidence in Medicare fraud case); *see also United States v. Campbell*, 845 F.2d 1374, 1381 (6th Cir. 1988) (chart admissible where it saved jury from reviewing hundreds of pages of technical information in Medicare fraud case). Charts admitted under Fed. R. Evid. 1006 may be sent to the jury at the trial court's discretion, with whatever limiting instructions the trial court determines to be appropriate.  *Possick*, 849 F.2d at 339-40.  The underlying evidence upon which the government's summaries are based was disclosed to the defense during discovery, and any summary exhibits will be disclosed to the defense before trial.  The United States will also discuss with Defendants stipulations that would streamline this presentation.

Respectfully submitted,

Dated: September 3, 2013                 s/ Pamela Marentette

                                        BY: PAMELA MARENTETTE (MN#389725)
                                        Chad Blumenfield
                                        Bahram Samie
                                        Assistant United States Attorneys
                                        600 U.S. Courthouse
                                        300 South Fourth St.
                                        Minneapolis, MN 55415
                                        Chad.Blumenfield@usdoj.gov
                                        Tel.: (612) 664-5600

                                        Suzanne J. Moore
                                        Jane Berman Shaw
                                        Assistant United States Attorneys
                                        Thomas F. Eagleton Courthouse
                                        111 South 10th Street, Suite 20.33
                                        St. Louis, MO 63102

                                        Attorneys for the United States

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2013, the foregoing was served electronically upon all counsel of record.

Jonathan M. Bye
Lindquist & Vennum, PLLP
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
*Attorneys for Relator Health Dimensions*
*Rehabilitation, Inc.*

James G. Martin
Jeffrey L. Schultz
Armstrong Teasdale LLP
7700 Forsyth Boulevard, Suite 1800
St. Louis, MO 63105
*Attorneys for Defendants RehabCare*
*Group Inc. and RehabCare*
*Group East, Inc.*

Sean C. Cenawood
Glenn Colton
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089

D. McCarty Thornton
Dentons US LLP
1301 K Street NW
Suite 600, East Tower
Washington, D.C. 20005-3364
*Attorneys for Defendants Rehab Systems of*
*Missouri and Health Systems, Inc.*

s/ Pamela Marentette
PAMELA MARENTETTE

11